Good morning, Your Honors. Adam Woodrum with the Attorney General's Office, here representing the State of Nevada, an appellant. We are here, if it may please the Court, we are here on a grant of habeas corpus relief from the Nevada District Court on one ground. A habeas corpus petition, it's a second amended petition, and at issue in this appeal is ground two. And I forgot to mention that I would, I'm going to attempt to reserve a few minutes at the end. At issue is ground twelve, and ground twelve was a claim that due process, Ms. Babb's due process rights were violated by the Nevada District Court, by the trial court, because she was given what we refer to now as the Casland Instruction. It was an instruction that was approved of in Casland v. State. It states essentially that if you have found premeditation, if a jury finds premeditation, they've also found deliberation. Now, later in Byford, we had the Nevada District Court disapprove of that instruction. They called for a new instruction that more clearly defines premeditation and deliberation. The Polk Court, it was a panel of the Ninth Circuit. Kennedy When you say more clearly defined, which is the phrase you used, in other words, you just made it clear. It didn't change the law, right? Well, Judge, it clarified. I think it's the word Byford used. It clarified the instruction. But I think that in terms of changing the law, NECA, which came along much later after Polk and after Byford, NECA made very clear that the Byford instruction was a change in the law. Casland was good. Casland was a good instruction until the time of Byford. Byford became the new instruction. So what you're saying is the clarification is the same as the change in the law. No, Judge, I'm not saying that at all. I guess the Byford court said clarified. The Byford court did not use the term of art clarification. Now, if there was any doubt that this was a change in the law, first of all, I'd like to say that in terms of Byford being a change in the law, it was a radical break from Casland. Byford on its face was apparently a change in the law. And NECA discusses this in footnote 68. And footnote 68 says that not only was Casland always a good instruction, but that similar constitutional challenges were denied in terms of Casland. So Casland, NECA makes it very clear, even if Byford was inartful or ineloquent, NECA makes exceptionally clear that Byford was a change in the law. Now, the Nevada Supreme Court gets to make that decision. And that's the decision that they made. So it was a Casland instruction state, and then it was a NECA. Then it was a Byford instruction state. Now ---- And the NECA goes on to say, but, of course, that should apply, even though we didn't properly apply it in Byford. It should apply to any case that is not final as of that time. That's correct. A description which would include, as NECA itself said, the case in Polk, and would include the case before us today. That's correct. The date of the finality of the ---- You want us to take what the Nevada Supreme Court says in the first two paragraphs, but not in the paragraph that follows. Well, Judge, I think that the case ---- first of all, yes, the case of Babb, and I meant to mention this, Babb's case is indeed what we refer to as window cases in the briefing. Here's the hitch. NECA does not get to determine Federal law. But Polk does. And Polk says that it applies. Polk says it's a ---- Polk says that it's a windship problem. Polk doesn't say it applies as a matter of Federal due process. Polk says it's a straight windship problem. Now, if NECA had come out and said, yes, Byford was a clarification. Casland was always wrong and we always should have been using Byford. Then Polk would be correct. There would have been a windship violation in Ms. Babb's trial. There was not because Byford changed the law. Now, in terms of NECA, NECA does say these window cases should get the new instruction. But NECA doesn't get to make Federal law. What you're saying is true, and I'm not sure. But didn't the Supreme Court in Bunkley ---- let's talk about Bunkley a little bit. Didn't the Supreme Court in Bunkley basically say that a change in State law that occurred before conviction was final had the same Federal due process implications as a clarification did in Fiore? That is, that it would permit the State to convict someone for conduct that was not prohibited under the law. I'll grant you that Bunkley says that. The issue is that Bunkley is not ---- does not afford Federal habeas relief because it has not clearly established U.S. Supreme Court law for that point. Bunkley is a very narrow holding. It's a pure curium on the denial of certiorari. They remand the case to Florida to determine whether or not a change or a clarification was made. And then we don't know what happened to the case. But the holding of Bunkley was very narrow, and we don't get to use dicta to grant habeas relief. And I'm not ---- I'm of the opinion that there is still no case that says that changes in State procedural rules, State criminal law, get applied to window cases. I'm of the opinion that there's no clearly established U.S. Supreme Court law that says that. Well, when you look at Bunkley and Fiore and Griffith, you don't think that's ---- you can come easily or, you know, come to that conclusion? Well, Judge, Fiore, if I may, is never asked the question. Fiore never asked the question. They didn't have to ask the question. But we know what the Supreme Court said in that. Yes. So the Supreme Court said Fiore never committed a violation of criminal law because Pennsylvania said that it was ---- I believe it was Pennsylvania. Correct me if I'm wrong. Fiore, Mr. Fiore, never committed a violation of law. This was the permit case. And he had a phony permit. And the Supreme Court's or the State said, we weren't concerned about a phony permit or a forged permit or whatever it was. You just had to have a permit. That's what made it a crime. So there was never a commission of a crime in Fiore. So there was absolutely no question of retroactivity. It's not as though ---- it's not as though like with a pocketknife in Bunkley that the law changed, the law was never that he committed a crime. So they never asked the question. Fiore never asked the question of whether or not it's a change or clarification of law. Now, and you mentioned Griffith, and I would distinguish Griffith on the grounds of this not being a constitutional issue. And because it is not, my argument is that it is not a window, it is not a windship constitutional issue. So the issue would be ---- Kennedy, say it. What are you referring to? The instruction, the instructional error that's alleged. You mean in our case? I mean, you're not talking about Griffith now. You're talking about our case. Yes. Okay. Go ahead. Well, this is Griffith. Griffith applies new constitutional rules to cases that are not yet final. And this is not a constitutional rule. Because your State says it's not. Because my State is permitted to define what the law is. My State is permitted to define criminal law. Let me go back for a minute to Polk and just ask you this question. In your view, is Polk still a viable case? In other words, are we bound by Polk? Well, I think it's a very good, very fair question. And like I mentioned earlier, if this was a clarification, Polk would be good law. Polk assumes that it's a clarification in the law. Polk assumed Biford. After Garner, Polk assumes Biford is a clarification in the law. Nika, which the Vadis are in court making a decision, he gets to make it, Nika, said no. Biford was a change in the law, a break in the law. That is apparent not only from the radical break that Biford took, but also from the express statement from the Nevada Supreme Court in Nika. And then I feel like I missed part of your question. No, go ahead. Okay. And if you could. Well, first of all, Polk preceded. What was that case? Was it Bunkley? You know, whatever case it was that said in so many words. Nika. The State Supreme Court. Nika. Yeah, Nika, final word, right? Okay. Go ahead. I'm sorry. I missed. Go ahead. Oh, okay. Well, if there are more follow-up on the Polk-Nika issue, I would like to just address quickly the harmless error analysis. And the error I'm alleging in the harmless error analysis is quite simple. There was citation made by Judge Proh to the Zant decision. The Zant is a 1983 decision. It says that in cases of multiple instruction without a specific, without an expressed decision by the jury as to what theory of murder is being applied, it's essentially a structural error. So Judge Proh's citations to Brecht notwithstanding, he's relying on a case that's simply no longer good law. Hedgepeth comes out and tells us, well, we're going to add to this list of things that are not structural errors, that are subject to harmless error, we're going to add this exact scenario to that list. And in this case, if I could direct your attention to the record instruction. I guess I just, why wasn't this harmless error? Give me your best argument as to why this wasn't harmless error. In light of the evidence in this case and the instruction that was given. The harmless error is because this is a felony murder case. If you look at the facts of this case, this is a very clear felony murder case. I think that the district court judge even, I don't want to put words in his mouth, but he says that this, at least he says that the felony murder is not affected by this Polk-Nika issue. Now, if you look at instruction 18, the excerpt of record 114, it gives the jury two options to find first-degree murder. Now, I know there is language later. There's another instruction about aiding and abetting.  or felony murder. So those are our two options. Those are the options the jury is given. And if you go to section 23, which is the next instruction at excerpt of record 119, the first line of the premeditation instruction, the challenged instruction here, the first line is unless felony murder applies. Now, we presume that juries follow their instructions, and we also look at all the instructions as whole to determine whether or not any error was substantial and injurious. And if you look at that, there was no reason for this jury to ever consider premeditation. She made a very clear confession to committing to planning and committing a robbery. Death results in a vow to that felony murder. Unless there are any other questions, officer. No. You may. Thank you. Good morning. May it please the Court. Lisa Rasmussen on behalf of Letitia Babb. I should first tell you, and I told my opposing counsel, I intend to submit a Rule 114 to the Court of Appeals.   But I would like to make a point that I think the Federal Defender's Office did in the Companion case that's going to be argued next. The substance is the same as what we've seen in the other case. Is that correct? Exactly. Right. And that's on the ‑‑ And we've seen those, so ‑‑ The Moore. Okay. All right. I just, I'm in the middle of a death penalty trial right now, so I didn't get it done. Okay. So a court has asked, I'll start with the most recent thing first on the harmless error issue. It's been our position that the State is precluded from arguing anything having to do with harmless error because they didn't assert it as a defense at the district court level. Well, we've got Breck as a problem. I mean, to grant habeas relief, don't we have to satisfy Breck somehow? Yes. And I think it's satisfied in this case. I think that Judge Proulx's analysis, the district court's analysis that this was not harmless error. It's a general verdict that was given at trial, a general murder instruction, a general verdict. We have no special verdict. We have no way of knowing. And not only that, the State emphasized the premeditation issue by arguing the factual issue of the comments she made to the reporter. Those comments to me amount to a defense counsel, you can't do, you can't control your clients sometimes, but how could it not be felony murder in light of her own comments to the reporter? The issue is we don't know. They were given three different options. We don't know isn't good enough to satisfy Breck. I mean, you've got an obligation to show there was prejudice someplace, don't you? I think that the fact that there is no, that they're given the option, premeditation, deliberation, felony murder, and aiding and abetting, and that we have no special verdict. Isn't that just arguing structural error? Yes. Well, then. Well, Hedgbeth tells us we've got to look, doesn't it? Yes. And if we look, what do we find? Well, we don't know. Okay, I accept we don't know. But I've got to tell you, if I conclude based on the law that we have to look and that to succeed on a habeas petition, petitioner has to demonstrate prejudice, we don't know doesn't demonstrate prejudice. What should lead us to have a serious concern that this conviction would not have been based on felony murder? Because a felony murder conviction doesn't raise any of the instruction issues that are the Nika Polk issues. And I've got to tell you, based on the facts, this seems like kind of a classic case of felony murder. Well, and I think that's why it's important that we consider the district court's recent ruling in Moore because that's also a felony murder case. I mean, this isn't, this is one of an entire series of cases coming out of the District of Nevada where the district judges are all concluding that these cases, that this particular issue, this Polk causal and instruction issue, is infirm and that it's a violation of clearly established Federal law under Polk. But, see, that, okay, and for the purpose of this discussion, assume that I'm on board with you, that I think we've got an instruction violation with regard to the threefold premeditated, deliberate, and so forth. But felony murder doesn't get there. And if we conclude that the conviction here, that there's not a reasonable probability or whatever the formulation turns out to be, because it keeps changing depending on the issue, if we conclude that the jury here would have found felony murder anyway, how can we grant relief? So why is it we shouldn't think that felony murder was going to be found anyway? Because the State argued contrary to that. The State argued that they planned it ahead of time. The State argued that there was planned. It being the killing or the robbery? The robbery. Well, that's felony murder. But then, but that's how, yes, I understand that. But the State also argued that if you don't believe that, then there's aiding and abetting. That requires a specific intent. And that's a little bit different scenario. The State could have just argued felony murder. But they didn't. The State chose to argue all three and to give all three instructions. And then we have a general verdict. The State could have simply just argued felony murder. But they didn't. I assume you're aware that one of the 28 J letters we got from the Federal Defender's Office covered our court's unpublished decision in Winfrey. Yes. And not precedential. As it happened, the panel included Judge Fletcher, the author of Polk, sustaining Polk but saying, in this case, it's just not going to make any difference. And so that's really what I'm trying to put to you. Don't tell me what the State argued to the jury. Tell me what in the facts of this case, the record of this case, could lead us or should lead us, in your view, to conclude that the jury would not have convicted on felony murder anyway. Because I think that's the problem here. The instruction problem doesn't affect a felony murder conviction. And unless we conclude that it's not reasonably probable that felony murder was going to be the result, I don't think your client can succeed on the habeas petition. Your Honor, I go back to the fact that we have no idea, because it was a general verdict, what the jurors convicted her on. The State argued all three. That's almost always the case. And that doesn't prevent us from concluding harmless error in lots of cases. Well, it's actually, I, as a matter of practice, request special verdict forms for this exact reason. Good practice. And I'm often told no, which I think seems silly, because here we are. But when there are different options given, and the State actually argued those options, the State argued in its closing that she aided and abetted, that this was the plan from the beginning, that Weston Syrix and Sean Hart decided they were going to kill someone. And Syrix was supposed to do it, but Sean Hart ended up doing it, that there was a plan to kill. The State argued that she was a co-conspirator and a co-defendant to that plan to kill. So we don't know in this case how they came up with their verdict. The other thing the State talked about that I wanted to touch on is that the Nevada Supreme Court shouldn't be able to evade Federal review by simply renaming things a clarification versus a change in the law. I mean, that's clearly what's happened here. In 2000 ---- You don't think the U.S. Supreme Court clearly said that that's the exclusive province of the State Supreme Court to make that decision? I don't think that the U.S. Supreme Court intends to say we can deprive people of Federal due process constitutional rights by just relabeling things. I don't think that's what the U.S. Supreme Court intended to do. In other words, you're saying there's like a, let's say, a subterfuge exception. Yes. Well, how do we apply that? Just common sense? I think the holding here should be that the State cannot simply relabel things as a means of depriving people of Federal constitutional due process rights. I understand the State's argument. They're saying this is not a clarification. It's new law, right? And so, I guess, is there any Supreme Court case holding that elements in criminal statutes cannot have overlapping definitions? I mean, isn't it possible that willfulness or deliberation, depending on how these are defined, could be included with premeditation? I didn't see any Supreme Court case requiring a specific definition of those terms. So what's your response to that? My response is I don't know. I don't know whether there's a U.S. Supreme Court case that addresses those specific issues. If there isn't, then the Supreme Court hasn't really spoken on that and hasn't prohibited that. It seems like it's possible for premeditation to define or to be defined with these other terms. So I'm just trying to figure out, now that the State has said in NECA what it has said, why doesn't it overturn or why doesn't it undermine Polk? Well, I don't think that the Nevada Supreme Court has the ability to undermine Polk, which is this Court's authority, A. Polk, in one sense, is an interpretation of State law, isn't it? Yes. And it's not up to the Federal courts to define State law, is it? Well, what you said in Polk, I think, is that the State court failed to analyze its own observations under Byford. Byford essentially said we've been doing this way too long. We renounce all of our prior authority where we have allowed this muddling of the distinction between first-degree murder and second-degree murder by not giving any specific definition. Yes, but all that seems not to matter anymore now that the Supreme Court has said it's up to the State court to, State supreme court to, you know, tell us whether it's a change or a clarification. It's at sole discretion. Now, for instance, following up on Judge McGeeh's question now, you know, different States, different jurisdictions, including the Federal. I mean, they define, you know, this mens rea requirement of murder differently, right? They're all different. So, not all different, but, you know, there's several different ways to approach  So, I can see where it's possible to say in good faith that, well, it's, you know, it's a change in law. We change from this set to that set. But on the other hand, you can make the argument that, well, because murder is really defined by the legislature, right? And in Nevada, it's the same definition that we've had since 1861, I think. The Supreme Court can't really change it. You know, their only job is to interpret it, to clarify it. That's correct. But on the other hand, the Supreme Court has given the State Supreme Court the authority to label its work product as a change or a clarification. Is that what it amounts to? But I don't think that the U.S. Supreme Court has given the State of Nevada the authority to change the label as a means of depriving people that each and every element of its own statute be proven. You know, that's, I think, the problem that we're still not addressing is we still have a scenario now where the State's not required to prove each and every element beyond a reasonable doubt of its own statute. Well, actually, the State Supreme Court in NECA suggested that it was. I mean, in NECA, the State here is arguing that the Supreme Court was wrong, but NECA says that for window cases, the windows should still be open because NECA says that the change should apply to cases where the convictions were not final. That includes Mitzvahs. Is there relief available in State court based on NECA? Well, these issues were all raised in a State habeas. Prior to NECA. That's true. In Pingston, and you wouldn't necessarily be familiar with this, the State is making an argument, kind of, the window's been reopened. Of course, they also say, and a year passes and the window closes again, which is an unusual image that we'll get to in that case. But I query whether NECA suggests that there may be relief in State court because the State courts are obligated to follow NECA's interpretation of Federal law, even if the State argues in this court that NECA's interpretation was wrong. Well, I'm actually thinking about the timing of NECA, which is 2008. I believe we were actually back in Washoe County during that era, but I don't think that we – I think we had already briefed our success petition issue. You've gone down the road on this argument, so I can understand. Right. So I don't – you know, I think that timing-wise, we may have been there, but it wasn't raised. So I – it looks like I need to sum up. I would urge the Court to affirm Judge Proulx's opinion in this case and the granting of the habeas petition. There are several reasons for that. One is the State – we had a lot of conversation about harmless error, but it's still not an issue that was ever raised at the district court level. It's raised for the first time on appeal, which we believe is improper. Nonetheless, I think I've answered the question by saying we don't know. I think that the State argued and continues, actually, to emphasize that there was a premeditation plan by the co-defendants and that she aided and abetted that plan. And with regard to the timing, Ms. Babb is the person who falls under all of the proper timing issues to have preserved these – this particular issue. And it's an issue that she's preserved from the very beginning. She's certainly entitled to the relief that Judge Proulx found she was entitled to. And I emphasize again, this is one of many cases that are coming out of the District of Nevada. This is basically what the district court is doing, not just in this case, but in a whole series of other cases, including other felony murder cases. Thank you. Thank you. Mr. Woodrum. Thank you, sir. And thank you for allowing this time today. I truly appreciate the opportunity. I'd like to address first the issue of evasion of Federal review. Now, you can't just change the law and have that called an evasion of Federal review. Evasion of Federal review does have a standard. It is an extreme circumstance. It's unusual, and the decision would have to be, quote, unexpected and indefensible. I certainly don't think that calling bifur to change in the law is indefensible or necessarily unexpected. Second thing I wanted to follow up with was I recalled as I sat down the last part of your question, which is whether or not you're being asked to overrule Polk. And I don't believe necessarily that a panel can overrule a panel. I think that's fairly clear. But, I mean, Polk, just the concept I have to raise is that Polk, the legal landscape, changed in NECA. Polk would have been correct if NECA decided that bifur was a clarification. NECA decided bifur was a change. Polk never asked the question. Polk could have certified that question. They didn't do it. It absolutely would have impacted the Polk decision. And I think it impacts the legal landscape now. Well, actually, NECA tells us it shouldn't have impacted the Polk decision because NECA says, you know, Polk should have gotten the benefit of this. In so many words it says that. In state law, Your Honor. In state court. And I'm not going to stand here today and say that Babb would not have been entitled had she gone back when she was back, actually, and raised this issue. Because as a matter of state due process, NECA says, yeah, Babb should have gotten the new instruction. I don't work for the county. I'm here to defend the Respondents in a habeas corpus action. And in a habeas corpus action in Federal court, we don't have a rule that says that this has to apply. I still have not seen, and I don't think counsel came up with the case, a U.S. Supreme Court case that's clearly established that's not dicta, like Bunkley is, that says Babb has to get this instruction as a matter of Federal due process. I don't believe that that case exists, and we've spent some time looking for it. Now, Bunkley says that, but like I've argued, I believe Bunkley's dicta, and I don't believe it's applicable. If there are no further questions, I see no further questions.  I do have one question. I'd like to get your response to Ms. Rasmussen's contention that, well, harmless error shouldn't be an issue here because the State waived it in district court. Well, Judge, and the briefing I did on this, what my position is, the position I'm taking is that the district court, saying they were bound by Polk, or were bound by Polk, they had no choice but to discuss harmless error. Now, if a judge sua sponte brings up harmless error, it has to be done correctly. For a district court to raise an issue, sua sponte. You didn't raise it, though, in district court. You agree, right? I will agree that it was not raised in district court. So why doesn't, according to our law here, that's waived. Why do we consider it at this point? Well, because it would eviscerate appeal of any sua sponte issue. I mean, the – and I would have to refer to my brief, and I feel like I don't want to waste the Court's time today doing that, but the issue is that if a district court raises an issue, it's raised, and it's proper on appeal. And if I missed a case that you're referring to, I apologize. But my understanding, when I looked at this issue, I saw Ms. Rasmussen's brief, I said, oh, shucks, I looked at this issue, and it seems as though if a district court raises it, I get to appeal it. Because he had to do it. Judge Proh had to do a harmless error analysis if he was going to apply Polk, because that's what Polk tells him to do. Now, then he has to do it right. He can't rely on a structural error case from 1983. He has to consider Hedgepeth. Hedgepeth is directly on point, directly binding.  And so I think it's important for us, in light of that case, to have the structure of the harmless error analysis performed again. Thank you very much. We thank both of you for your helpful arguments in a confounding case. The case just argued is submitted.
judges: Tashima, Clifton, Murguia